**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SALMAN PODDUBNOV,

                 Petitioner,

      v.

FERETI SEMAIA, et al.,

               Respondents.

Case No. 5:26-cv-01175-MRA-DTB

**ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [4]**

Before the Court is Petitioner's Motion for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 4. Petitioner seeks immediate release from custody and to enjoin his removal to a third country. *Id.* at 2. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application in part, **ORDERS** Respondents to release Petitioner forthwith, and **ENJOINS** his further detention unless and until he is provided proper due process necessary for the revocation of an Order of Supervision ("OSUP").

//
//
//
//

-1-

## I.       <u>BACKGROUND</u>

Petitioner Salman Poddubnov ("Petitioner") filed this habeas petition on March 12, 2026.  ECF 1.  The petition alleges as follows:

Petitioner is a citizen of Russia and has resided in the United States for yearly 10 years.  ECF 1 ¶¶ 14, 24.  In April 2016, Petitioner entered the United States with a visitor visa.  *Id.* ¶ 30.  Later that year, Petitioner applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  *Id.* ¶ 32.  On or about June 11, 2020, Petitioner was convicted of conspiracy to commit wire fraud (18 U.S.C. § 1349) and sentenced to 12 months prison (time served) and three years' supervised release.  *Id.* ¶ 33; *see also* ECF 8 at 2.  Immigrations and Customs Enforcement ("ICE") detained Petitioner upon his release from prison and placed him in removal proceedings.  ECF 1 ¶ 34.

On October 7, 2020, an immigration judge entered a removal order against Petitioner and granted deferral of removal under Article III of CAT pursuant to 8 C.F.R. § 1208.17(a). *Id.* ¶ 35.  On or about November 5, 2020, ICE released Petitioner from immigration custody and placed him on an Order of Supervision ("OSUP").  *Id.* ¶ 37.  Pursuant to the OSUP, Petitioner was required to check in periodically with ICE and provide notice of any permanent changes in address or phone number.  *Id.*  Petitioner has complied fully with his OSUP requirements and reports in person to his local ICE office.  *Id.* ¶¶ 5, 38.  Since his release, Petitioner obtained an employment authorization document from the United States Department of Homeland Security ("DHS").  *Id.* ¶ 14.

Petitioner is an amateur boxer and has opened two boxing gyms in his community. *Id.* ¶ 31.  Petitioner provides training to troubled youth.  *Id.*  Petitioner's wife also resides in the United States and has a pending asylum application.  *Id.*  She is currently pregnant with their second child.  *Id.*  The couple's three-year-old daughter is a United States citizen. *Id.*

On March 6, 2026, Petitioner appeared for an ICE check-in and was promptly detained.  *Id.* ¶¶ 6, 39.  Petitioner contends he was not informed of the reasons for the revocation of his release or offered the opportunity to contest his re-detention.  *Id.* ¶¶ 6, 8.

Petitioner remains in immigration custody and is currently held at the Desert View Annex detention facility in Adelanto, California. *Id.* ¶ 19. On March 12, 2026, Petitioner's counsel attempted to speak with the ICE deportation officer assigned to Petitioner's case but was advised that Petitioner's case had been referred to ICE headquarters. *Id.* ¶ 45. Petitioner's counsel alleges ICE is now searching for a third country that will accept Petitioner. *Id.* Petitioner does not have a valid travel document and purports the government has not requested or obtained one for him. *Id.* ¶¶ 46-47.

In the instant TRO Application, Petitioner requests that the Court enjoin Respondents Fereti Semaia, Warden of Dessert View Annex; Ernesto Santacruz, Jr., Acting ICE Field Office Director; Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of DHS; and Pamela Bondi, Attorney General of the United States (collectively, "Respondents" or the "government") from continuing to detain him. ECF 1, 4. Petitioner argues that his re-detention violates his Fifth Amendment right to due process, the Immigration and Nationality Act ("INA"), and implementing immigration regulations. ECF 4 at 8. Petitioner also requests the Court enjoin Respondents from removing him to a third country without adequate notice and an opportunity to be heard pursuant to immigration regulations. *Id.* at 11-12.

On March 18, 2026, Respondents filed an Opposition to the TRO Application. ECF 8. Respondents argue that Petitioner fails to establish that there is no significant likelihood of removal in the reasonably foreseeable future and that DHS improperly invoked his OSUP and detained him. *Id.* at 4-8. On March 19, 2026, Respondents filed a Supplemental Opposition including the Notification of Revocation. ECF 9.[1] Respondents also argue that Petitioner's request to enjoin Respondents from removing him to a third country should be denied. ECF 8 at 8-10.

---

[1] Petitioner requests the Court strike the Supplemental Opposition because it was filed a day after the Court-imposed deadline. ECF 10 at 7-8 (citing L.R. 7-12). Given the short delay, the Court declines Petitioner's request and considers Respondents' Supplemental Opposition.

On March 20, 2026, Petitioner filed a Reply.  ECF 10.  Petitioner argues Respondents misapplied *Zadvydas*, failed to identify "changed circumstances" justifying revocation, cannot demonstrate ICE followed its mandatory procedural requirements, and misconstrued Petitioner's request regarding third-country removal.  *Id.* at 7.

## II.  **LEGAL STANDARD**

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is substantively the same.  *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).  Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Id*. at 1132.

## III.  **DISCUSSION**

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to

the merits of his unlawful detention claims, that Petitioner has established irreparable harm, and that the balance of hardships tips sharply in Petitioner's favor.

### A. <u>**Likelihood of Success on the Merits**</u>

In deciding whether to grant injunctive relief, "[l]ikelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner contends that his continued detention violates his rights under 8 U.S.C. § 1231(a), and that ICE's failure to comply with its regulations before re-detaining him violated his right to due process under the Fifth Amendment of the United States Constitution. ECF 1 ¶¶ 58-87. Petitioner also argues that removal to a third country would violate his right to due process under the INA and implementing immigration regulations. *Id.* ¶¶ 88-94. The Court addresses these claims in turn.

### 1. *Unlawful Detention*

The detention and removal of noncitizens[2] ordered removed is governed by 8 U.S.C. § 1231 ("Section 1231"). Section 1231 states that, once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *Id.* § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* § 1231(a)(3).

The revocation of release on supervision after the expiration of the removal period—*i.e.*, the revocation of an OSUP, like the one issued to Petitioner—is governed by 8 C.F.R. § 241.13(i). *Tiraturian v. Bondi*, No. 5-25-CV-03239-WLH-DFM, 2025 WL 4061565, at *2 (C.D. Cal. Dec. 8, 2025). Under that regulation, an OSUP may be revoked: (1) if the

---

[2] The Court prefers the term noncitizen, but uses the terms noncitizen and alien interchangeably, given the statutory and regulatory language at issue.

noncitizen "violates any of the conditions of release," *id.* §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Additionally, certain designated officials may revoke an OSUP as an act of discretion. *Id.* § 241.4(l)(2).

The regulations also establish "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and receive an "initial informal interview promptly" after being detained, to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a 'prompt' opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." *Tiraturian*, 2025 WL 4061565, at *2.

Citing *Zadvydas v. Davis*, 544 U.S. 678 (2001), Respondents argue that Petitioner bears the initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. ECF 8 at 4-6. In *Zadvydas*, the Supreme Court considered a noncitizen who had been detained and never released following a final order of removal. 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." *Id*. Respondents argue Petitioner cannot succeed in establishing his current detention is unreasonable because "Petitioner's current detention is just less than two weeks" and DHS intends to remove Petitioner to a third country. ECF 8 at 4, 6.

But as several district courts have recognized, *Zadvydas*'s burden-shifting framework does not apply to noncitizens who are *re-detained* pursuant to the revocation of an OSUP. *Lu v. Joyce*, No. 2:26-CV-00041-SDN, 2026 WL 352447, at *3 (D. Me. Feb. 9, 2026); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); *Saqib v. Andrews*, No. 1:25-CV-2035 DC CSK P, 2026 WL 350830, at *3 (E.D. Cal. Feb. 9, 2026), *report and recommendation adopted sub nom.*, No. 1:25-CV-02035-DC-CSK (HC), 2026 WL 440566 (E.D. Cal. Feb. 17, 2026); *Espada v. Doe*, No. 5:25-CV-02983-JWH-KES, 2026 WL 181539, at *5 (C.D. Cal. Jan. 20, 2026), *report and recommendation adopted*, No. 5:25-CV-02983-JWH-KES, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026). As those cases and the immigration regulations make clear, when the government revokes supervision to effectuate removal, the *government* bears the burden of showing "a significant likelihood that the [noncitizen] may be removed." *See Andrews*, 2026 WL 350830, at *3.

Petitioner argues Respondents offer no evidence that there is "a significant likelihood of removal" in the "reasonably foreseeable future." ECF 10 at 10-12. The Court agrees. The government makes no mention of any efforts to obtain travel documents or details of plans effectuated to remove Petitioner to a third country, and merely states "DHS intends to remove Petitioner to an alternate third country." ECF 8 at 6. At best, the government has stated that there is a "mere possibility that removal will occur," which is insufficient to carry its burden of showing a "significant likelihood" of removal. *Yan-Ling X. v. Lyons,* No. 1:25-CV-01412-KES-CDB, at *4 (HC), 2025 WL 3123793 (E.D. Cal. Nov. 7, 2025).

As noted above, the regulations permit revocation of supervision of a noncitizen for whom a final removal order has been issued upon a determination that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). This is the basis the government invokes to justify Petitioner's detention. But even when such a determination is made, the regulations require that the government provide the noncitizen with written notice and a prompt informal interview and an

opportunity to submit evidence, so that the noncitizen may show that no such likelihood exists. *Id.* § 241.13(i)(3).

The generic language in the Notice of Revocation issued to Petitioner merely states that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal," without providing any factual support other than indicating that Petitioner's case "is under review for removal to an alternate country." ECF 9 at 4. Such language has been found to be procedurally deficient and noncompliant with § 241.13(i)(2). *See Morales Sanchez v. Bondi*, No. 5:25-CV-02530-AB-DTB, 2025 WL 3651899, at *5 (C.D. Cal. Dec. 5, 2025); *see also Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225–26 (D. Mass. 2025) (holding generic notice stating only that officials "review[ed] [the] file" and determined "there are changed circumstances" failed to comply with the regulation or provide meaningful notice sufficient for due process).

There is another fundamental flaw in the government's position—"Section 241.13 requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked." *Andrews*, 2026 WL 350830, at *5 (citing cases); *see* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56971 (Nov. 14, 2001) (codified at 8 C.F.R. pts. 3, 241) ("[I]n any case where, based on a change of circumstances, the Service later makes a determination that there is a significant likelihood that the Service *subsequently* will be able to remove the alien . . . in the reasonably foreseeable future, the custody provisions of § 241.4 will again apply. *In that event*, the Service may return the alien to detention in connection with the removal . . . ." (emphasis added)). The only changed circumstance regarding the likelihood of Petitioner's removal that the government can point to is DHS's intention to remove Petitioner to a third country. There is no indication that DHS made any effort to arrange Petitioner's removal to a third country prior to ICE revoking his OSUP and re-detaining him on March 6, 2026. In essence, the government contends that its post hoc actions can retroactively cure any regulatory and constitutional violations, but that is not the law.

-8-

In sum, the government has failed to demonstrate a significant likelihood that Petitioner's removal is reasonably foreseeable, and even if it had, the written notice it gave to Petitioner stating the reasons for the revocation of his OSUP was plainly deficient and violated the applicable regulations.

Moreover, the government does not even attempt to argue that it provided Petitioner with a "prompt" opportunity to present evidence or explain why revocation was not warranted. Respondents argue "Petitioner was *immediately* issued a revocation letter upon his detention . . . . The foregoing process is more than sufficient under the relevant regulations and the U.S. Constitution—and no more process is due to him." ECF 8 at 6. The government fails to acknowledge its duty to provide Petitioner an opportunity "submit any evidence or information that he . . . believes shows there is no significant likelihood he . . . will be removed in the reasonably foreseeable future, or that he . . . has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3). Nor is there any indication that the government undertook "an evaluation of any contested facts relevant to the revocation" or made a post-detention "determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.13(i)(3). Put simply, it appears undisputed that the government did not provide the process demanded by 8 C.F.R. § 241.13(i)(3). These procedural deficiencies have led numerous other district courts to find procedural due process violations. *See, e.g.*, *Rinku v. Bondi*, No. 5:26-CV-00409-MEMF-ADS, 2026 WL 323281, at *5 (C.D. Cal. Feb. 6, 2026) (finding likelihood of success on procedural due process claim where petitioner "was given no opportunity to be heard at all"); *McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (finding ICE failed to follow regulation where petitioner was not given opportunity to respond "at a meaningful time"); *Zheng v. Marin*, No. 5:26-CV-00519-ODW (MAAX), 2026 WL 323282 (C.D. Cal. Feb. 6, 2026) (finding likelihood of success on merits where "Respondents failed to give Zheng meaningful notice of his OSUP revocation and an informal interview, in violation of their own regulations"); *Morales Sanchez*, 2025 WL 3651899, at *6 (finding absence of "required interview" and

-9-

"Petitioner's inability to respond" "demonstrates that Petitioner's detention is likely unlawful").

"It is well established that government agencies are required to follow their own regulations." *Delkash v. Noem*, No. 5:25-cv-01675-HDV (AGRx), 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Courts in this District and around this Circuit have "unequivocally found that the government's failure to follow its release procedures—in particular the failure to give a detainee the required notice and interview—renders the re-detention unlawful." *Id.*; *see, e.g., Palacios v. Marin*, No. 5:26-cv-00132-AB (SPx), 2026 WL 166903, at *2 (C.D. Cal. Jan. 16, 2026) (granting TRO based on the government's failure to provide requisite notice and interview under 8 C.F.R. § 241.13); *Mahalati-Shirazi v. Noem*, No. 5:26-cv-00117-MWC (SSCx), 2026 WL 175654, at *5 (C.D. Cal. Jan. 18, 2026) (same). For the foregoing reasons, the Court concludes there are serious questions as to whether the government followed its own procedures in revoking Petitioner's OSUP and violated his due process rights.

### 2. Third Country Removal

Petitioner argues that removal to a third country without prior notice and an opportunity to present a fear-based claim would violate his rights. ECF 1 ¶¶ 88-94. However, Petitioner has not shown that the government intends to remove him to a third country absent notice and an opportunity to be heard. Respondents admit their intention to remove Petitioner to an alternate third country, ECF 8 at 6, but claim Petitioner will be provided notice and an opportunity to be heard before his removal, *id.* at 8-10. "Therefore, Petitioner's fear of being removed to a third country without proper notice or opportunity to respond is only speculative and not ripe for adjudication." *Morales Sanchez v. Bondi*, No. 5:25-CV-02530-AB-DTB, 2025 WL 3190816, at *4 (C.D. Cal. Oct. 3, 2025); *see also Farsi v. Noem*, No. 5:25-CV-03275-WLH-MBK, 2025 WL 4041921, at *5–6 (C.D. Cal. Dec. 10, 2025) (denying TRO with respect to third country removal because Petitioner

failed to assert removal to third country was imminent); *Ovikian v. Noem*, No. 5:26-cv-00158-WLH-E, 2026 WL 242700, at *7 (C.D. Cal. Jan. 23, 2026) (same).

Nevertheless, the Court reminds the government that its ongoing efforts to seek Petitioner's removal to a third country must comport with the applicable statutes and regulations as well as Petitioner's due process rights.  *See* 8 U.S.C. § 1231(b)(3)(A)*;* 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18.  Under the INA, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country."  8 U.S.C. § 1231(b)(3)(A).  Relatedly, Congress codified protections enshrined in the Convention Against Torture prohibiting any person from being removed to a country where they would be tortured.  *See* 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18.  "Failing to notify individuals who are subject to deportation that they have the right . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."  *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).  "[T]hird-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings."  *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass.), *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025).

## B.    Irreparable Harm

Petitioner claims that continued unlawful detention in violation of his constitutional rights has caused irreparable harm warranting preliminary relief.  ECF 4 at 13-14.  Citing *Resendiz v. Holder*, No. C 12–04850 WHA, 2012 WL 5451162 (N.D. Cal Nov. 7, 2012), Respondents argue Petitioner's detention is "common to all [noncitizens] seeking review of their custody or bond determinations."  ECF 8 at 10.  Respondents take *Resendiz* out of context.  There, the court found "the fact that pursuing appeals through administratively-established procedures may result in delay is common to all [noncitizens] seeking review

of their custody or bond determinations." 2012 WL 5451162 at *5. Here, Petitioner is not detained pending review of his bond determination; rather he is unlawfully detained given the government's failure to follow the proper procedures in revoking his OSUP and inability to articulate any significant likelihood of Petitioner's removal in the reasonably foreseeable future. The Court therefore agrees with Petitioner that "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).

Given the Court's conclusion that Petitioner has raised serious questions going to the merits of his claims, the Court finds that the irreparable harm factor weights strongly in favor of granting Petitioner's immediate release.

## C.   Other *Winter* Factors

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because of the public's interests in preventing the violation of constitutional rights and having governmental agencies abide by federal laws. ECF 4 at 15. Respondents argue that the significant public interest in enforcing the immigration laws outweighs Petitioner's private interest. ECF 8 at 11-12.[3]

---

[3] At the very end of the government's Opposition, the government states that the "significant public interest outweighs Petitioner's private interest here, especially given the Petitioner's extensive criminal history, which includes a 2024 conviction of Sex with a Minor." ECF 8 at 11. These are serious allegations. However, Petitioner claims the 2024 conviction is a "complete fabrication"—that he "has no such conviction, no such arrest, and no such charge—in 2024 or at any other time, and even Respondents' supporting exhibits attached to the Opposition fail to support such a horrific allegation." ECF 10 at 7, 21. According to Petitioner, "Respondents appear to have attributed another individual's criminal history to [him]—a grave error that calls into question the reliability of the Opposition as a whole and the care with which Respondents reviewed Petitioner's actual case file." *Id.* at 21. The Court has carefully reviewed the documents provided by the government, and while they mention one conviction from 2019 involving conspiracy to commit wire fraud—which *pre-dated* the immigration judge's decision to grant Petitioner

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of ordering the release of Petitioner because it obviously would be neither equitable nor in the public interest to allow the government to continue to violate federal law.

### D.   Scope of Relief

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S.*

---

deferral of removal under the Convention Against Torture in 2020—there is absolutely no mention of any 2024 conviction, much less of one involving such a serious crime. In addition, the government does not mention the conviction elsewhere in the Opposition or the Notice of Revocation, which is surprising, to say the least, given that such a recent conviction for such a serious crime would be a clear basis for revoking Petitioner's supervision. Thus, because there is no reliable evidence that Petitioner was convicted in 2024 of any crime, the Court does not consider this single and unsupported statement in its analysis. Moreover, the Court admonishes the government for making such a potentially damaging statement without any explanation or corroboration.

-13-

*Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)).  Petitioner asks the Court to order his immediate release.  ECF 4 at 2.  Respondents argue that "the appropriate remedy for any such procedural deficiency would not be automatic release from custody, but rather to remedy the specific procedural deficiency."  ECF 8 at 7.

The government does not propose how it might "remedy the specific procedural deficienc[ies]" identified herein, but in any event, any such belated offer to do so rings hollow and "would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process."  *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025).  As many courts in this District and Circuit have similarly concluded, the only way to restore the "status quo" "is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his OSUP."  *Id.*; *see also*, *e.g.*, *Ovikian v. Noem*, No. 5:26-CV-00158-WLH-E, 2026 WL 242700, at *6 (C.D. Cal. Jan. 23, 2026); *Nguyen v. Noem*, No. 5:25-CV-03191-WLH-MAR, 2025 WL 4058239, at *3 (C.D. Cal. Dec. 19, 2025); *Yan-Ling*, 2025 WL 3123793, at *7; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 749 (W.D. Wash. Aug. 21, 2025) (ordering immediate release of noncitizen detained in violation of regulations).

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

//

//

//

//

//

//

//

-14-

**IV.   CONCLUSION**

For the foregoing reasons, the TRO Application is **GRANTED** in part and **DENIED** in part.  The Court **ORDERS** as follows:

1.   Petitioner shall be **IMMEDIATELY RELEASED** from custody pursuant to the same terms of his preexisting OSUP without any additional restrictions or conditions, including electronic monitoring;

2.   Respondents are **ENJOINED** from re-detaining Petitioner unless and until he is provided proper due process under the Constitution and immigration laws and regulations necessary for the revocation of an OSUP;

3.   Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue.  *See* L.R. 65-1.  Respondents shall file any written response to the Order to Show Cause no later than **March 30, 2026.  Failure to file a response will be deemed consent to the issuance of the preliminary injunction.**  Petitioner shall file a reply no later than **April 2, 2026.**  If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **March 30, 2026**.  The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect and expire within 14 days.  The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: March 23, 2026

_____
HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE